first case this is read versus Ryan case twenty four dash one zero zero seven zero council you may proceed good morning my name is Anthony Lake I am arguing for appellant Patrick Nathaniel Reed Mr. Reed is a professional golfer he is a highly accomplished and distinguished professional golfer he is the winner of the 2018 Masters Tournament and nine tour victories everyone can see he's a public figure right yes okay so I think if we can get to maybe focus on the defamation claim New York Times and its five elements that have to be satisfied and the one that I the second element I think we also agree it's a publication so the second element in terms of falsity of the statements he's challenging can you speak to that why is your client contending that the statements especially in two of the publications are false Mr. Mr. Reed brought a number of defamation claims in this case and he brought claims for defamation per se and defamation by implication many of the statements published by the defendants in this case accuse or imply that Mr. Reed is a cheater Mr. Reed has never been determined to have ever cheated if he had he would have been disqualified in any tournament are these reporters saying he is a cheater or are they saying others have accused him of cheating and if so isn't that that an important distinction they the defendants either outright state that he's a cheater or more often they defame him by implication by the implication that he is a cheater by saying things such as he's been he was crucified when certain deal details came out regarding an incident during a tournament that he was skewered his reputation is in the mud they have defamed his reputation the defendants have basically in the words of the defendant Gavin Newsom he has become the golf villain the bad boy of golf completely undeservedly he's suffered immense injury to his reputation so in that article in particular the scandalous truth about Patrick Reed at least twice if not three times in the article it says re-deny this accusations re-deny those assertions re-deny any wrongdoing so is that not sufficient in the article to at least present both sides of the situation? We acknowledge they state that but they leave other facts out regarding you know the background the fact that he's been cleared by PGA officials the facts that you know in terms of his college career he has statements from coaches that state that he has never been determined to have cheated. I thought there was one incident in which let's see it's in the Newsom article where it says that his coach ultimately reduced the sanction to a two to match suspension so it does seem that some wrongdoing had been found by his coach and that a punishment was imposed even though the punishment was reduced so how was that false leading to in support of your defamation claim? Well in the Newsom article they make statements about Mr. Reed implying that he was cheating stating that you know he was challenged by his teammates and denied any wrongdoing and it was a similar story when he attended Augusta State well Mr. Newsom doesn't provide any details of what allegedly happened at Augusta State. He also makes statements. Isn't that in fact true though? In other words at Augusta State as I understand it and this isn't disputed there there also were allegations made by teammates the teammates voted him off the team and the decided to override that and instead impose some sort of suspension. Isn't that right? That is correct. So I mean it is more of the same I mean that's not false is it? Well it we would allege it is creating a false implication that he was cheating that you know these undisclosed details in the article they're not disclosed. Do we consider the larger context so I mean even and again we don't have to make any leaps here even from the complaint there's a lot of information about your client out there and we don't assume that that someone only looks at the New York Post and doesn't look at and watch especially if they're interested in this information all the other stuff that's out there and so yes I mean not every detail is is placed in every single article individually but collectively the details of this seem to be pretty well well-trodden and well-known I mean indeed you sue what like 15 different people over the two lawsuits I mean so a lot of this stuff was out there right? Well the the facts regarding Mr. Reed's college career are known and stated in places but for instance in some of these publications there there are allegations about him in various tournaments implying that he has cheated so I'd like to actually defamatory. I'd like to ask one or two questions about another element under the Sullivan test and that's actual malice it's difficult to prove and I think Iqbal and Twombly make it maybe even more difficult to show at the leading stage for you tell me your best sort of presentation for how you meet the the under Iqbal and Twombly the actual malice standard. Well and under Iqbal and Twombly a plaintiff has to plausibly allege actual malice and the district court below found well it's sort of focused in on two things that demonstrate actual malice the the failure to retraction and the in this case the court focused in on the refusal to print a retraction constitutes actual malice and then that material exculpatory evidence was not disclosed. Well that's a very reading of what Mr. Reed alleged in this complaint he alleged numerous facts can support actual malice. Tell me what those are. They are he has alleged a relationship among the defendants the fact they work closely together they work in concert he has alleged the rivalry between the PGA tour and LIB golf and the fact that he has become a target for the golf media. That gets to the sort of evil intent and ill will and it seems to me that that the case law both Florida and the both US Supreme Court and ours have said that it bad intent ill will is insufficient in order to establish actual malice. Do I do I have am I wrong on that do I have a misreading of that law? Well I think in order to plausibly allege actual malice if you have enough you know with more than a single fact if you have of course but a number of facts tending to show actual malice. I'll give you one example so one of the Don King cases there are many but this is from the fourth DCA in 2010 quote an intention to portray a public figure in a negative light even when motivated by ill will or evil intent is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing and reckless falsehood in other words without meeting the standard in Sullivan. That that is what that says we we allege further details in our pleading. What give me what other facts? Well former negative stories written about Mr. Reid. If those are true I mean whether they're negative or not if they're true stories I mean that like how can that how can a bunch of negative true stories equal actual malice? Well I think when viewed in combination with the other facts that we allege demonstrate actual malice the court may make a finding that Mr. Reid has plausibly alleged actual malice or reckless disregard for the truth on the half of the defendants. Okay just first it sounds like you're conceding that the case law Judge Luck just discussed in terms of the role of ill will when it comes to evaluating your defamation claim doesn't doesn't play a part. So in terms of actual malice what responsibility do you believe the reporters had to verify the information that had already been in the public square upon which they relied? And I'm specifically thinking about the book that was published regarding your client upon which I believe Newsham's article relies heavily. What should they have done to verify if at all the book's findings? Well Mr. Ryan has interviewed Mr. Reid in the past. He published an earlier book where he interviewed Mr. Reid never brought up any any questions about his cheating allegedly and the answer the court's... The 2015 book though did recount some of the details of his college career did it not? Some of them. Yes. Not all it didn't set out all the details and it created an implication that Mr. Reid is a habitual cheater which is simply false. Well it presented a narrative that had been recounted by others and so it could be for the reader to such that out for themselves but I'm not sure if those articles are are are implying for themselves that he's a cheater. It sounds like they're reporting that others have witnessed him or consider him to be a cheater. You can go ahead and answer that question please. We would maintain that the article the book and the article do imply that he's a cheater even though they reference past accusations of cheating by others. You know for instance when Mr. Ryan said he was crucified or he was skewered he's implying after narrating the past events that Mr. Reid has allegedly been caught cheating. That is the clear implication of his statements. Mr. Reid has never once again ever been determined to have cheated during a tournament. He has you know there's been a rule violated. He has been you know sort of treated appropriately by the officials but he. We're going to end there and we'll hear you in rebuttal. OK. Thank you so much. Good morning Your Honors. May it please the court. Jeremy Chase for Appellee's Shane Ryan Hachette Book Group and NYP Holdings Inc. This court should affirm the district court for three primary reasons. One plaintiff's amended complaint fails to plead any facts sufficient to give rise to a reasonable inference that the statements were made with actual malice. Two the district court was correct to hold that with the exception of one statement none of the made a false statement of fact about Mr. Reid. And number three the lower court was also correct to dismiss this with prejudice given the fact that plaintiff had already amended his complaint once. The amended complaint was a shotgun pleading and any amendment here would be futile. Now Your Honors if I may I'd like to speak to the actual malice point first. So what do we make of the badges of fraud. The Supreme Court at least is intimated that that I don't know it has used the word badges. I think others may have used it but at least is intimated that some of the things that we've been talking about could be seen as evidence of fraud. I understand their subsequent case law and there seems to be some contrary view at least with some of those indicators. But why would we not look to you know what it has said and in its footnote about the evidence of what could be malice and and why not does that not track well with what they've alleged. And Your Honor just to be clear you're referring to the actual malice not fraud correct. That's correct. Yes. So yes Mr. Mr. Reid has cited to an article by manual socios about the badges of malice which is based on Herbert versus Lindo. Yes which is on the older side as far as cases on actual malice but post Sullivan. Yes. Yes I'm not calling actual malice. However we need to look at the complaint here and the complaint is really confined to three types of allegations against my clients and actually all the clients in this and the next case. And those are straight buzz words you know repeating that my clients acted recklessly or with actual malice with no factual support. This court has held repeatedly that that's not all right. So let's put that aside. I agree with you. So let's cross those out. So that's number one number two. As you pointed out it will. And again you know aside from the fact that it will isn't sufficient to plead actual malice. This court has held in a number of cases actually that it will improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice. And I'd refer the court to the Morby Cecil case Coral Ridge Ministries and done the airline products which that case was on summary judgment. But again that's the genesis of that statement. The third category is general allegations of a failure to investigate. And now your honors here these are very conclusory allegations. Mr. Reid alleges that the defendants chose not to speak specifically Mr. Ryan chose not to speak with his college coaches teammates PGA tour officials about the incidents described in the book. And that's a paragraph 69 of their. Why is that not a reasonable inference that no proper investigation was conducted before making these statements that he was a cheater. Those statements that he's now challenging. Sure. And because when you look at the book it's quite clear that that is just not a statement. The book the two books. So I want to direct your on. So taking a step back the 2022 book which is the book that's at issue in this case the issues particularly surrounding any article and the newsroom article. Sure. But right now I'm just referring to Mr. Ryan's book that book when speaking about the allegations of cheating from college refers back to his 2015 book which came out which went into great detail about those allegations. And we're looking at that book. It speaks in great detail about who he spoke with including Mr. Reid's coaches Josh Gregory Chris hack a number of his teammates a number of other tour pros PGA tour officials. This was a very well researched book. Now Mr. Reid Mr. Ryan when publishing another book referring back doesn't need to recount the entire chapter where he lays out all the details. It's sufficient under the law to refer back to his prior publication which is out in the public domain as your honors mentioned before. Many people have published about this. This was well known in the golf community. And frankly people who are reading Shane Ryan's book about selecting the Ryder Cup team are golf fans. This isn't you know this isn't a general you're someone who doesn't follow golf isn't picking up Shane. Right. And so I think to judge Lux's point of to remind everyone they're also the articles. It could be the book that is not that you're saying it's a smaller subset of society focus. But these articles do have wider distribution. That's true. Let's say if the book is false has false statements in it. But Mr. Reid decided not to file suit because it doesn't have the same wide publication. But the articles have much broader publication and that implicates the veracity of what's in the book. So what obligation do the reporters have at that stage to make sure that what's in the book is accurate. Well Your Honor this court in the Berisha B. Lawson case held that a subsequent publisher may rely on previously published reports and reputable sources. And Shane Ryan's book most certainly is a reputable source. Shane Ryan is a well-known golf reporter. The previous 2015 book was published by Random House. This book was published by Hachette two of the big five publishing houses. They have every right to rely on that. And there's plenty of other case law to that effect as well. Nixie ESPN is another case I recognize is an unpublished decision but it's from this court as well. Liberty Lobby Dow Jones Company out of the D.C. circuit. There are a number of cases that hold just that. But on top of just relying on Mr. Ryan's book the books I should say the New York Post article includes hyperlinks to previously reported articles as well that show a fair amount of the information that it contains in this book which it showed its work so to speak. Can I ask about a couple. So you mentioned two buckets the ill will and the investigating. Yes. But I read the complaint to have some other what I'll call buckets of allegations regarding potential actual malice. One is the failure to disclose your counsel your co-counsel mentioned this the failure to disclose the sculptory information in reporting and the other is the retraction. That's what your counsel co-counsel your opposing counsel mentioned was the failure to print retractions. Why are those two not potential allegations that we could use to support an actual malice plausible allegation. Well so taking the second one first with respect to the retraction that's post publication conduct. So actual malice is measured at the time of the public at the time the publication is. The problem is a lot of this is and Judge Abudu sort of references a lot of this is cascading. So like yes it might be post for some of them but it would be pre for others where you have multiple. And this may apply in the second argument a little bit more than the first argument. But when you have sort of multiple series of things you're true it's true it may be post post article but post publication but it'll be prepublication for other things. Well yes I mean another point is this also assumes that a retraction demand was sent which I don't believe that's anywhere in the record that a retraction demand was sent to to Hachette after the book was published. That gets to some defenses under Florida law. But in terms of just actual malice though why is that not a factor to consider. They my clients had no reason to doubt the truth of what they published is the fact of the matter. I mean you know Mr. Ryan's I mean the 2015 book where the bulk of the cheating allegations or I should say recitation of allegations of cheating first appeared. He had spent a year embedded on the PGA Tour. I mean he had spoken with a number of people who backed up exactly what was in that book. After he published that book Mr. Reid came out with an interview on the golf channel where he denied everything presented these statements from his former coaches. And so when we get to the new not disclose exculpatory information i.e. those affidavits not again evidence of ill will or I'm not I'm sorry of actual malice. Well because those affidavits don't dispute what Mr. Ryan reported those affidavits and we recount this in our briefing and below all that they say the affidavit from Chris Hack his Georgia coach. All that it said was he didn't hear about allegations of cheating or stealing. Of course the 2015 publication by Mr. Ryan recounted that after he came out with that statement the his other reporters came forward and confirmed a lot of the details in Mr. Ryan's case and pointed out the fact that it wasn't exactly addressing what Mr. Ryan said. With respect to Mr. Gregory's statement he had as you pointed out before in that statement he admitted that Mr. Reid had been caught shaving strokes and was suspended for it. Now whether or not one wants to call that cheating or an honest mistake. Cheating or an honest mistake is a matter of opinion. People are allowed to draw their own conclusions about someone's conduct based when it's fully disclosed and true. So thank you. Thank you. Good morning, your honors. May it please the court. My name is Carol LoCicero with Thomas & LoCicero and we represent the Associated Press and the Associated Press' golf columnist Doug Ferguson. So I just wanted to point out that with Mr. Ferguson's article it's actually a sports column reporting on the questions of why certain things are happening in the fan base. It only discusses a tournament in the Bahamas in 2019 where a two-stroke penalty was assessed against Mr. Reid and then a second tournament in I think it's 2021 where there was a fan firestorm that after there was a question about embedded ball relief. That article doesn't go back into Mr. Reid's history in college and outside of those two tournaments. It's entitled Reid's Reputation from the Bahamas is the Ultimate Penalty. I mean the title, right, is challenging as well. So I think the first thing is if we're talking about objective reporting, where in that article is Mr. Reid's perspective or position? I think there's a legitimate argument that a report that is so one-sided really is not very objective and does arguably by implication suggest everything is true because Mr. Reid's voice is not Mr. Reid's voice though is included in the article. What this is is it's actually not really a news article in the sense of reporting about this happened at the tournament, that happened at the tournament, who won, who lost. It's a column and it clearly signals that to the readers that there's going to be opinion and commentary in the column. So then direct me and remind me where Mr. Reid's voice or perspective or position is reflected? Sure. Yes, Your Honor. In Mr. Ferguson's AP article, it reflects that Mr. Reid said that the video of the two-stroke penalty in the Bahamas was essentially not as bad as it seemed. And it also reported that not only Mr. Reid's position but sort of the PGA Tour's blessing on Torrey Pines and the embedded ball relief, that Mr. Reid basically said he did nothing wrong and that it wasn't illegal under the golf rules that an official gave him embedded ball relief and the full circumstances of what happened in Torrey The Bahamas happens and then Torrey Pines comes along and there's another fan firestorm about Mr. Reid. And the fan firestorms aren't in dispute. I mean, there, you know, there's a paragraph in the amended complaint that alleges 20 different insults included seven fans calling him a cheater. There's clearly a known fan firestorm here. And so if the PGA Tour said he did nothing wrong, why is that? And Mr. Ferguson opines that it's because of the Bahamas tournament and the two-stroke penalty and how that public perception of Mr. Reid, which is fairly subjective, an inquiry, influenced how the public reacted after Torrey Pines. Thank you, counsel. Thank you. Good morning, Your Honor. May it please the court. Gregory Herbert with Greenberg Torrey for Bloomberg LP and Eric Larson. This court can and should affirm the lower courts ruling dismissing the complaint against my clients and need look no further than the Rubin decision from this court. In 2001, that case, in fact, presented much stronger facts than this case for the plaintiff. That plaintiff was a private figure plaintiff. He was the plaintiff in that case. Just to step back for a second. Bloomberg's article included a photograph of Mr. Reid and Mr. Reid's claims are all based on the photograph. He is not identified in the article. He's not captioned. Is there any debate, especially for golf fans, that this is a picture of Mr. Reid with his head down, looking in shame, some might say, with this title, with the title of the article? There's no debate about that, right? There's no debate that the picture is Mr. Reid. I will say that not to be flip here, but some folks have commented that the photo at issue is more hat than pat. It's got the live logo on it, which is much more plausible that the photo was chosen for. The logo was on his hat. Is he the only golfer? I guess the question is, I mean, of all of the choices of golfers who are part of this particular league, if that's the right description, you chose Mr. Reid. I see the point, Your Honor, but I think the Rubin case and also this court's unpublished opinion and the Perrette case and several of the other cases that have been cited stand for the proposition that you've got to look at the context of the article. What is the article about? And here the article is about live. Indeed, the challenge statement is the headline, which only references live and PGA. The article is about this lawsuit, and so the concept that the case has developed is that when you write an article about a group of people and you happen to have a photo of one person that may be a member of that group or may not be, may be somebody that's just incidental or illustrative of that group, that person does not have, the article is not of and concerning that person in the photo, and that's the case here. Can I ask, with regard to Mr. Larson, district court gave an independent basis for dismissing him, correct? Yes. And has that been appealed? No, that has been waived or abandoned. Right, so really we're only discussing your Bloomberg client. Mr. Larson, for all intents and purposes, was dismissed on jurisdictional grounds, and that hasn't been appealed to us, right? Yes, and I think the dismissal was with prejudice on the merits. Well, but I think I'm also thinking of a case, I think, Farrer, in which it involved a picture of someone, but the article was about someone who had been accused of a crime, but it used the photo of the wrong person. And so, arguably, that article had nothing to do with the person who was in the photo, but there was a reasonable implication or inference that the photo was relating to someone who had committed a crime. Why is that not the case here with Mr. Reed in this photo, in this article? The reason that's not the case is that even that case says you have to look at what is the article about. Is the article about a person? Is the person identified? In that case, the plaintiff was identified. He was misidentified. And, indeed, those appear to be the only cases like this that have succeeded. There's this charming old case from 1909 with Oliver Wendell Holmes about a woman who was in an ad for whiskey, and she didn't drink, and she wasn't a nurse. Those are the types of cases that could succeed. That article, in particular, the Tallahassee Democrat, was a brutal murder. The article was about a brutal murder. The only photo accompanying that was a photo of the plaintiff with somebody else's name. So he was misidentified in the photo. That article was about somebody who committed a murder. This article is not about Mr. Reed by any stretch, and the district court correctly found that it's simply implausible, if not absurd, to argue that it's a reasonable implication to draw that the article, which is about a discovery dispute and accusations and counter-accusations, as Your Honor points out, they said, this is what Liv is saying about this. This is what PGA is saying about this. But as your friend suggested over here, most people who are going to read this are going to be golf fans, and aren't they going to know that that, in fact, is Mr. Reed? They might. We're not contesting that. Even if the picture had him perfectly in his face, I'm only suggesting that the fact that he's got the Liv logo on his hat and on his lanyard is a more plausible explanation for why this photo was chosen, as among others. Thank you, counsel. Thank you. You have four minutes, counsel. Returning to the court's question on actual malice alleged by Mr. Reed, I wanted to finish out the facts in the complaint, which support a finding of actual malice, which should support a— Did I fairly describe all the buckets to your opposing counsel? I tried to be as fair a reading to the plaintiff as I could with going through the categories. Did I miss a category? Well, the court did point out certain buckets. We would point again to the Florida Bar Journal article as indicating a wide variety of facts which can be relied upon in alleging and supporting actual malice. There does seem to be some inconsistency between the Lindo case, which that article relies on for a lot of its information, with later case law, both from the Supreme Court and our court, which seems to indicate that at least some of those factors are not ones to consider, including the ill-will one. What do we do with that tension? Well, I will point the court to recent decisions. There's a decision, Palin v. New York Times, where they found that actual malice had been established based on the journalist's hostility to the former governor of Alaska. Yeah, and I mean, those are all New York and Second Circuit cases. They are. That's true. I think your opposing counsel mentioned our recent Moore case, Moore v. Cecile, mentioned the Berisha case. Those seem to indicate that ill-will is insufficient, at least in our circuit. What do we do with that? Well, I think ill-will can be considered in a combination in order to establish a plausible – going by the Twombly standard, plausible allegations of actual malice. I think the statements themselves can be considered – a lot of statements in this case, which Mr. Reid has alleged, he claims are defamatory per se. I mean they accuse him of his professional reputation. Do you agree, though, that defamatory per se doesn't absolve the plaintiff of having to allege actual malice? It does not, but we would submit that it can be considered in that kind of matrix of – Where you accuse someone of a crime or something that would fit in a per se category. Right, or dishonesty, cheating is core defamation per se. I wanted to respond to some of Counsel for Mr. Ryan's arguments. The court below found that most of the statements by the defendants – well, practically all of them – constituted protective opinion under the First Amendment. And under the law, in order to be protective opinion, the statement or publication in question has to give all the facts. If it misstates facts or omits facts, it doesn't set forth all the facts. It is not protective opinion. I thought the law for pure opinion was it just needs to give a sufficient factual basis in order to render the opinion. Is there any case law which suggests that if there's any – that it has to give everything? It has to give the whole wind-up before you can render the opinion? We would submit it. If it omits relevant facts, then it would not be valid protective opinion under the law. If it misstates facts or if it implies hidden facts that have not been disclosed, that would not constitute protective opinion. And that here is what the court based most of its findings that the statements in question were protected and not actionable. If your time is running out, can you talk briefly on the tortious interference claim? My read of Florida law seems very clear that if you lose on defamation, you don't even have a tortious interference claim. I believe that's correct. The single action rule is difficult to surmount or get around. We appreciate that, counsel. Thank you. Thank you so much. And we're going to hear from you again in a minute. All right.